IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROSEMARIE NEAL, RANDY SAMMONS,
And JOSEPH TRUJEQUE, on their own
Behalf and on behalf of all others similalry situated,

        Plaintiffs,                  29 U.S.C. § 216(b) Collective Action

v.                                       No. 08-CV-1010

                                       **JURY TRIAL DEMANDED**

THE BOARD OF COUNTY COMMISSIONERS
OF BERNALILLO COUNTY,

        Defendants.

**COLLECTIVE ACTION COMPLAINT**
**(29 U.S.C. § 216(b))**

COME NOW Plaintiffs Rosemarie Neal, Randy Sammons and Joseph Trujeque, on their own behalf and on behalf of all others similarly situated, by and through their counsel, YOUTZ & VALDEZ, P.C. (Shane Youtz, Brandt Milstein), and for their complaint against Defendant allege as follows:

1. Plaintiffs, current employees of Defendant, are suing on behalf of a proposed class of all current and former Correctional Officers who are or were employed by Defendant to staff Bernalillo County's Community Custody Program (the "CCP").

2. Bernalillo County's CCP is a community-based supervision and treatment program which provides for community-based custody as an alternative to confinement of inmates at the Bernalillo County Metropolitan Detention Center.

–1–

3. Plaintiffs bring suit to recover back pay, compensatory, exemplary and punitive damages as a result of Defendant's failure to pay employees for all hours worked and for Defendant's failure to pay overtime wages as required by law.

4. Plaintiffs bring this action under state wage and hour laws and the federal Fair Labor Standards Act (the "FLSA") (29 U.S.C. § 201 et seq.).

5. Plaintiffs and other employees are non-exempt employees paid by the hour and are entitled to receive one and one-half times their hourly rate for work beyond forty hours per week under state and federal law. Plaintiffs and other employees are or were employed by Defendant and did perform work for Defendant in the last three years.

**Jurisdiction and Venue**

5. Defendant Bernalillo County is a municipal corporation located in New Mexico.

6. At all times relevant hereto, Plaintiffs were residents of the State of New Mexico.

7. Venue is appropriate in this Court.

8. This Court has jurisdiction pursuant to 28 U.S.C. §1331 because this cause of action is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. Sec. 201, et seq.

**General Allegations**

9. Plaintiffs work for Defendant as Correctional Officers staffing Bernalillo County's "Community Custody Program" (the "CCP"). These Correctional Officer employees are designated as "Regular Trackers" and "Day Reporters" in their roles monitoring inmate participants ("clients") in the CCP.

10. Regular Trackers' duties include, *inter alia*, managing a caseload of 25 or more participants in the CCP. Such monitoring includes daily visits with clients in the CCP headquarters, 2-5 check-ins per day with clients via telephone, biweekly (2 times per week)

–3–

home visits with clients, the administration of two Urine Analyses ("UA's") per client per week, and a weekly visit with the client in a community setting. Regular Trackers are required to complete extensive paperwork documenting their monitoring activities and, importantly, Regular Trackers are required to monitor, via a mobile phone or personal digital assistant ("PDA") device, all signals, phone calls, alerts and code transmissions which are generated by the technology used to keep track of program participants.

11. Day Reporters' duties include, *inter alia*, managing a caseload of 50 or more participants in the CCP. Such monitoring includes daily visits with clients in the CCP headquarters, monthly home visits with clients, the administration of two Urine Analyses ("UA's") per client per week, and a weekly visit with the client in a community setting. Daily Reporters are required to complete extensive paperwork documenting their monitoring activities and they, like their Regular Tracker counterparts, are required to monitor all signals, phone calls, alerts and code transmissions which are generated by the technology used to keep track of CCP clients.

12. CCP clients are, in turn, required to wear ankle bracelets and to "blow" into breath alcohol level monitoring devices (know as sobrioters) in their residences. The ankle bracelets and alcohol monitoring devices transmit signals to Regular Trackers and Day Reporters each time a client leaves his or her designated monitoring radius, stays away from their residence for an inappropriate period of time, fails to self-administer a breath alcohol test at the designated interval, fails a breath alcohol test, etc.

13. In addition, both Regular Trackers and Daily Reporters receive messages and/or phone calls on their PDA's each time a client requests permission to deviate from his or her regular work and counseling schedule and each time a client has an emergency of any sort which

will cause them to deviate from their schedule. Regular Trackers and Day Reporters must approve of such deviations from client schedules. Further, Regular Trackers and Day Reporters receive messages on their PDA's each time a client incurs new criminal charges or is reported as having escaped custody.

14. Regular Trackers and Day Reporters are required to monitor their PDA devices and to view all incoming messages twenty-four hours per day, seven days per week. It is rare that twenty minutes pass without a message or call arriving at an employee's PDA. Each message and call must be checked by the employee. These employees often receive upwards of 70 PDA messages and calls per day. These calls and messages arrive at all hours-- all day and all night.

15. Regular Trackers and Day Monitors are not compensated for all the time they spend monitoring and responding to PDA messages.

16. In addition to monitoring and responding to the constant barrage of PDA messages and calls, Regular Trackers and Day Reporters are required to immediately track down and arrest any client when they receive a PDA message that the client: 1) Has given a positive UA; 2) Has blown a positive breath alcohol test; 3) Is reported by the ankle bracelet technology to have been away from his or her residence for more than 4 hours; 4) Has incurred new criminal charges or; 5) Is reported to have escaped the control of the program.

17. That is, the Regular Trackers and Day Reporter employees are required to respond immediately, perhaps getting up out of bed at 3:00 a.m. to track down and arrest clients when one of the above-listed messages is transmitted to an employee's PDA. This is the case whether the employees are in the office, at home, asleep or otherwise indisposed.

18. Regular Trackers and Day Monitors are not compensated for all the time they spend responding to emergent PDA messages.

19.     Regular Trackers and Day Monitors are also required to track the movements of high-risk offenders in the program (e.g., sex offenders, high-profile offenders, domestic violence offenders, etc.) via Global Positioning System ("GPS") technology. This often requires a Regular Tracker or Day Monitor to access the internet in his or her home on "off" hours to review the movements of each GPS-designated client.

20.     Regular Trackers and Day Monitors are not compensated for all the time they spend tracking the movements of certain CCP clients via GPS technology.

21.     Not including their ostensibly off-duty time (that time when these employees are required to monitor their PDA devices, respond to messages and access GPS data, but are not compensated), these employees work, on average, 65 hours per week in the office and out of the office meeting with clients, administering the program's requirements of clients and completing required paperwork.

22.     These employees are instructed by Defendant to submit falsified timesheets indicating that they work only 40 hours per week.

23.     These employees are not compensated for the 25 or more hours per week they work beyond 40 hours per week monitoring clients and completing paperwork.

24.     And again, these employees are not compensated for the additional on-call time they work each week monitoring and responding to the messages they receive on their PDA devices.

25.     As such, Defendant has intentionally and repeatedly failed to pay Plaintiffs and other employees for all of the time they worked and also failed to pay Plaintiffs and other employees time and one half for hours worked in excess of forty in a workweek.

## Collective Allegations

26. Plaintiffs bring this action as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all similarly situated employees employed by Defendant.

27. The proposed class consists of approximately 40 current and former employees who are similarly affected by the facts detailed above. In addition, the questions to be determined are ones of common and general interest to the many persons constituting the class to which Plaintiffs belong.

28. Common issues of law and fact exist and will predominate over purely individual questions in this litigation.

## Count I – Violation of State Wage and Hour Laws

29. Plaintiffs incorporate herein the previous allegations of this complaint.

30. Plaintiffs and other employees were not paid all wages due to them on their regular paydays, in violation of New Mexico Statute 50-4-1 through 50-4-30.

31. As a direct and proximate result of Defendant's failure to pay wages, Plaintiffs have suffered damages in the forms of lost wages and lost use of such wages.

## Count II – Violation of the FLSA (29 U.S.C. § 201 et seq.)

32. Plaintiffs incorporate herein the previous allegations of this complaint.

33. In any workweek in which Plaintiffs worked at least 40 hours, Defendant's failure to pay Plaintiffs at one and one half times their regular rate of pay, for hours in excess of 40, violated the Fair Labor Standards Act, 29 U.S.C. §§206, 207, 215, 216. As a result of such violations, Plaintiffs, and those similarly situated, are entitled to the damages, fees and expenses as set out in the Fair Labor Standards Act, 29 U.S.C. § 216.

34. Defendant's failure to pay wages due was willful.

35. As a direct and proximate result of Defendant's failure to pay wages, its hourly employees, including Plaintiffs, have suffered damages in the form of lost wages and lost use of such wages.

36. All hourly Correctional Officers, Day Reporters and Regular Trackers are employees of Defendant are similarly situated such that this case should be certified for a collective action under 29 U.S.C. § 216(b).

## Jury Demand

37. This case should be tried before a jury.

WHEREFORE, Plaintiffs pray that:

a. The Court determine that this action may be maintained as a collective action pursuant to 29 U.S.C. § 216(b);

b. This case be tried before a jury;

c. They be awarded compensatory damages;

d. They be awarded liquidated damages as permitted by law;

e. The court award Plaintiffs and the class they represent pre-judgment and post-judgment interest as permitted by law; and

f. The court award Plaintiffs and the class members such other and further relief, including costs and attorneys fees allowed under applicable law, as may be necessary and appropriate.

Dated: October 30, 2008              Respectfully submitted,

                                     **YOUTZ & VALDEZ, P.C.**

                                     _____/s/_____
                                     Brandt P. Milstein (brandt@youtzvaldez.com)
                                     Shane C. Youtz (shane@youtzvaldez.com)
                                     900 Gold Avenue S.W.
                                     Albuquerque, NM 87102
                                     (505) 244-1200 – Telephone
                                     *Attorneys for Plaintiffs*