IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ROSEMARIE NEAL, et al.,**

    **Plaintiffs,**

v.                                              **Case No. 08-CV-1010 JEC/GBW**

**THE BOARD OF COUNTY
COMMISSIONERS OF BERNALILLO
COUNTY,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiffs' *Motion for Partial Summary Judgment and Memorandum In Support* (Doc. 53) ("Motion"), filed July 30, 2009.  Having reviewed the parties' submissions and being otherwise fully informed, the Court DENIES Plaintiff's Motion.

**I.**      **BACKGROUND**

Plaintiffs are corrections officers who staff the Community Custody Program ("CCP") for Bernalillo County.  *3rd Am. Complt.* (Doc. 30) at ¶ 10.  CCP participants are required to wear ankle bracelets that track their locations and periodically blow into a breath alcohol level monitoring device and/or perform urinalysis screening for drugs and alcohol.  *Id.* at ¶ 13.  Plaintiffs each track 25-50 CCP participants, requiring them to monitor their PDA devices 24 hours per day, seven days per week to approve participants' schedule changes and otherwise track participants' compliance with CCP requirements.  *Id.* at ¶¶ 11-15.  Claiming that they are not compensated for all of their time monitoring and responding to PDA messages regarding CCP participants, *id* at ¶ 16, Plaintiffs assert claims for violations of state wage and hour laws as well as violations of the Federal Labor Standards Act ("FLSA"), *id.* at ¶¶ 30-37.

In their Motion for Partial Summary Judgment, Plaintiffs argue they are entitled to a judgment on the liability portion of their claim.  Plaintiffs also point to *Renfro v. City of Emporia*, 948 F.2d 1529 (10th Cir. 1991), wherein the Tenth Circuit affirmed summary judgment in favor of firefighters who sought FLSA compensation for their on-call time.  *Motion* at 2.  Defendant argues against summary judgment, alleging there are significant disputes as to the material facts.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(c).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A "genuine" issue of fact exists where the evidence is such that a reasonable jury could resolve the issue either way.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248).

In response to a motion for summary judgment, a party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." FED.R.CIV.P. 56(e)(2).  The party opposing summary judgment must present specific, admissible facts from which a rational trier of fact could find in his favor.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  However, the Court must consider the

record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion. *Adler* at 670 (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, 91 L.Ed.2d 265).

## III.   DISCUSSION

Plaintiffs in this collective action[1] claim that they are entitled to overtime compensation for what they characterize as their "24/7 job duties." *Motion* at 8-9. They cite to federal regulations providing that "[t]ime spent away from the employer's premises under conditions that are so circumscribed that they restrict the employee from effectively using the time for personal pursuits also constitutes compensable hours of work." 29 C.F.R. § 553.221(c).

The Supreme Court has declined to "lay down a legal formula" by which to determine whether on call time is compensable, given that cases are "so varied in their facts." *Skidmore*, 323 U.S. at 136. Instead, courts should scrutinize the particular facts related to the working agreements and determine whether those facts "show that the employee was engaged to wait, or ... that he waited to be engaged." *Id.* at 137. A recent synthesis of FLSA on call cases reports that courts generally consider two elements relevant to whether on call time is compensable: "(1) whether the wait predominantly benefits the employer; and (2) whether employees are able to use the time for their own purposes." Joseph E. Tilson, et al., *Hot Topics in Wage and Hour Law*, 802 PLI/LIT 681, 744 (2009).

The Tenth Circuit has focused on these same elements. In *Boehm v. Kansas City Power & Light Co.*, it noted that "the test for whether an employee's time constitutes working time is

---

[1] Plaintiffs have not moved to "certify" their collective action, and the Court has therefore yet to make any determination as to whether Plaintiffs are "similarly situated" as required for a collective action pursuant to 29 U.S.C. § 216(b) (providing that FLSA actions may be brought "by any one or more employees for and in behalf of himself or themselves *and other employees similarly situated*" (emphasis added)).

whether the 'time is spent predominantly for the employer's benefit or for the employee's.'" 868 F.2d 1182, 1185 (10th Cir. 1989). More recently in *Renfro*, the Tenth Circuit affirmed the district court's holding that firefighters' 24-hour on-call periods should be compensated because employers were unable to use the on-call time for their own purposes based on the following undisputed facts: (a) plaintiffs had an average of 3-5 callbacks per 24-hour on-call period; (b) it was difficult for plaintiffs to obtain and maintain secondary employment on account of the on-call time; and (c) that the 20-minute reporting deadline, the lengthy 24-hour on-call periods, and the possibility of receiving up to 13 calls, with an average of 3-5, during an on-call period effectively precluded firefighters from using their on-call periods for personal pursuits. 948 F.2d at 1534-35. It was "the frequency of the call backs" in *Renfro* which led the Tenth Circuit to find that the plaintiffs' on-call time was spent predominantly for their employer's benefits. *Gilligan v. City of Emporia*, 986 F.2d 410, 412 (10th Cir. 1993). Where a group of plaintiffs was called back less often—on average less than once per day—the Tenth Circuit has found "significantly less interference with personal pursuits" and declined to find on-call time compensable. *Id.*

In the present case, it is undisputed that Plaintiffs were employed by Defendant Bernalillo County "to monitor and maintain control over inmates in the [Community Custody Program] during the past three years. *Motion* at 4; *Def.'s Resp. in Opp. to Pls.' Mot. for Partial Summ. Jdgmt.* (Doc. 62) ("Response") at 1.

### A. Genuine Issues as to Material Facts Abound.

In their Reply brief, Plaintiffs argue that Defendant has failed to raise any genuine issue as to the material facts laid out by Plaintiffs. The Court disagrees and finds that numerous

factual disputes preclude summary judgment.

> **1. Plaintiffs do not present undisputed evidence to support their claim of a 24-hour per day, seven day per week work schedule.**

Plaintiffs' asserted undisputed material fact No. 2 is that they "are subject to a 24-hour per day, 7 day per week work schedule." *Motion* at 4. In support, Plaintiffs attach a four-page document purporting to be a "post order" setting forth duties and responsibilities of a community custody officer. *Id.* at 4; Ex. 2. Standing alone, this document is not admissible and is therefore not proper evidence in support of summary judgment. FED.R.CIV.P. 56(e)(1).

Although not cited in support of their Fact 2, Plaintiffs also attach affidavits from six CCP officers, each stating that "[p]hone calls and text message alerts come into my phone constantly, all day and all night." *Motion* at Ex. 4 (Trujeque Aff.) at ¶ 5; Ex. 5 (Torres Aff.) at ¶ 5.; Ex. 6 (Neal Aff.) at ¶ 5; Ex. 7 (Avila Aff.) at ¶ 5; Ex. 8 (Swanberg Aff.) at ¶ 5; Ex. 9 (Flores Aff.) at ¶ 5. These six CCP officers further testify that they receive, on average, anywhere from a low of 55 text messages per day, *id.* at Ex. 6 (Neal Aff.) at ¶ 7, to a high of 200 text messages per day, *id.* at Ex. 9 (Flores Aff.) at ¶ 7. *See also* Exs. 4-9 at ¶¶ 7. The six identified CCP officers report receiving, on average, anywhere from 10-75 phone calls per day. *Id.* at Exs. 4-9, ¶¶ 7. Only Plaintiff Trujeque and Plaintiff Torres set out the number of text messages and calls received outside of their regular 40 hours per week. Trujeque says he receives 15-25 text messages and 3-5 calls per day during his "off hours." *Id.* at Ex. 4, ¶ 7. Torres says he receives around 60 text messages and 5-10 calls during his "off hours." *Id.* at Ex. 5, ¶ 7.

Each of the six affidavits from the CCP officers also states:

> Upon receipt of an alert on my CCP-issued phone that an inmate on my caseload has failed an alcohol or drug test, has strayed from his or her residence for more than 4 hours, has incurred new

> criminal charges, or has escaped from t he custody of the program, I am required as part of my job duties to immediately inform my supervisor of the problem, travel to the locale of the inmate and return the inmate to custody, whether I am at the CCP office, at home, or anywhere else and regardless of the time of day when the alert comes in.

*Id.* at Exs. 4-9, ¶¶ 3.  Plaintiff Trujeque states he must travel to an inmate's locale and return him to custody during his "off hours" five or six times per week.  *Id.* at Ex. 4, ¶ 8.  Plaintiff Torres says he has to return an inmate to custody during his off-hours once or twice a week.  *Id.* at ¶ 8.  Plaintiff Swanberg reports she must return inmates to custody after hours once or twice per week.  *Id.* at Ex. 8, ¶ 8.  None of the other Plaintiffs who submitted affidavits report how often they must go out and return inmates to custody during their off hours or when they are on call.

Contrary to Plaintiffs' claims in Paragraph 3 of their affidavits, Defendant attaches the affidavit of Captain Patrick Cordova, the officer in charge of the Community Custody Program, indicating that most of the messages and calls Plaintiffs receive require no response from them.  *Id.* at Ex. A, ¶ 4.  For example, Captain Cordova notes that a CCP inmate's positive urinalysis "will only occur at the Community Custody Program office, and no alert or response would be involved."  *Id.*  Similarly, Captain Cordova testifies that CCP officers are "neither required nor expected to hunt down an escapee."  *Id.*  When new charges are brought against a CCP inmate, they are "brought by a law enforcement agency and [this] does not involve CCP officers."  *Id.*  Captain Cordova also states that a report of an inmate being out of residence for more than four hours "does not require an immediate response."  *Id.*  In short, Captain Cordova's affidavit indicates that Plaintiffs rarely are required to actually report to work during their off hours.

Aside from any required response, Plaintiffs claim that the 24/7 monitoring of calls and messages so limits their personal pursuits such that they should be compensated 24/7.  *Reply* at

2.  However, Plaintiffs are not entitled to compensation for their alleged "on-call" time unless that time is "spent *predominantly* for the employer's benefit." *Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944) (emphasis added).  Here, Plaintiffs have not presented undisputed material facts to show that 24 hours out of every day, for all seven days a week, their time is spent predominantly for the employer's benefit.

        **2.**        **Facts contradict Plaintiffs' assertion that they receive, on average, between 50-100 text messages and 50-60 phone calls each day.**

In their proposed Undisputed Material Fact No. 3, Plaintiffs claim they "receive between, on average, 50 and 100 text messages regarding CCP inmates each day, and receive between, on average, 50-60 phone calls each day from CCP inmates."  *Motion* at 4.  As evidence of this, Plaintiffs cite to the attached affidavits of Plaintiffs Torres and Neal.  *Id.*  Defendant argues these facts are disputed by affidavits of other Plaintiffs.  *Resp.* at 1.  Indeed, affidavits from four of the six Plaintiffs who provided affidavits state they receive much less than 50-60 phone calls per day.  Plaintiff Trujeque receives 20-30 calls a day; Plaintiffs Avila and Swanberg get only 10-15 calls per day; and Plaintiff Flores reports receiving only 10 phone calls a day.  *Motion* at Exs. 4, 7, 8, and 9, ¶¶ 7.  Fact 3 is therefore disputed.

Beyond the obvious fact dispute, the Court notes that in order to assess whether Plaintiffs' off hours are spent primarily for their employer's benefit, the critical fact is not how many text messages or phone calls each Plaintiff receives but, rather, how many messages and calls are received during "off hours" and what response is required of each Plaintiff as a result.  Plaintiffs have not presented this evidence.

        **3.**        **Plaintiffs' do not present evidence as to text messages or phone calls received during off hours.**

Undisputed Material Fact No. 4 states that "Plaintiffs receive text messages and phone calls that they must monitor and respond to during their 'off hours' and throughout the night." *Motion* at 4.  As an example of this, Plaintiffs point to the affidavit of Plaintiff Torres, reporting that he "must monitor and respond to 60 text messages during his 'off hours' and throughout the night and 5-10 phone calls during his 'off hours' and throughout the night." *Id.*

Defendant disputes Fact 4 based on the term "off hours," which it says is "vague and defined." *Resp.* at 4.  Significantly, only two of the six Plaintiffs who have provided affidavits in support of summary judgment even attempt to quantify the text messages and/or phone calls received during "off hours."  Plaintiff Trujeque reports significantly fewer interruptions in his off hours than Plaintiff Torres—15-25 text messages and 3-5 phone calls.  *Motion* at Ex. 4, ¶ 7.  Based on the facts established as to Plaintiffs Trujeque and Torres alone, the Court cannot find it undisputed that all Plaintiffs must monitor and respond to text messages and phone calls during off hours and "throughout the night."  It appears at least possible based on the affidavits of the remaining four Plaintiffs, none of whom quantifies the messages and calls received during off hours, that they are able to monitor and respond to text messages and phone calls within their regular 40-hour work weeks.  Moreover, Captain Cordova's affidavit disputes Plaintiffs' alleged duties to respond to the majority of text messages and phone calls received.  *Resp.* at Ex. A, ¶ 4.  Fact 4 is disputed.

### 4. Defendant disputes Plaintiffs' alleged duty to respond to alerts.

Plaintiffs assert in their Fact 5 that they "are subject to discipline should they fail to respond to alerts, regardless of the time, day or night when the alert is received." *Motion* at 5.  Defendant disputes this in that, as Captain Cordova has testified, Plaintiffs are not bound to

respond to each and every alert received.  *Resp.* at 2.  Fact 5 cannot be used to support summary judgment in Plaintiffs' favor.

      **5.**      **Plaintiffs lack admissible evidence in support of their proposed undisputed Fact No. 6.**

Asserting not only that Plaintiffs must "be completely relieved of duty and not be subject to page or call" in order to be considered "off duty" and go unpaid, but also that Defendant's counsel admits this, Plaintiffs cite to an email message purporting to be from County Attorney Jeff Landers to Henry Perea.  *Motion* at 5.  Initially, the email message upon which Plaintiffs rely is not admissible evidence and therefore cannot be relied upon in granting summary judgment.  FED.R.CIV.P. 56(e)(1).

Beyond this, the cited email does not support Plaintiff's Fact 6; in it, Landers states only this, "[i]f you do the 9 hour shift, they would have to have a one hour unpaid meal break. During this one hour unpaid meal break they must be completely relieved of duty and not be subject to page or call."  *Motion* at Ex. 10.  The message does not state that Defendant's attorney "admits that for CCP employees to be considered off duty and for these employees to go unpaid for a given period of time, they must 'be completely relieved of duty and not be subject to page or call.'"  Plaintiffs Fact 6 is unsupported and disputed for summary judgment purposes.

      **6.**      **Defendants contradict Plaintiffs' asserted Fact 7, that they are "required to leave their home[s] to apprehend [] CCP inmate[s] during their 'off hours' and throughout the night."**

Defendants directly contradict this assertion with the affidavit of Captain Cordova, which states that CCP officers, including Plaintiffs, are "neither required nor expected to hunt down an escapee."  *Resp.* at Ex. A, ¶ 4.  Whereas Defendants admit that Plaintiffs' job duties include conducting "random house visits to ensure that there are no illicit substances, weapons, or

9

visitors with whom they are not permitted to associate" and whereas these visits are "necessarily" performed outside of typical working hours (i.e., 8:00 a.m. to 5:00 p.m.), *id.* at ¶¶ 13-14, Plaintiffs assertion of being required to "apprehend" CCP inmates "throughout the night" is not supported and, in any case, directly contradicted.

## IV.   CONCLUSION

The majority of facts offered by Plaintiffs in support of their Motion for Partial Summary Judgment are both disputed and insufficient to support a finding that Plaintiffs are entitled to compensation 24 hours per day, seven days per week.

WHEREFORE, IT IS ORDERED that *Plaintiffs' Motion for Partial Summary Judgment and Memorandum in Support* (Doc. 53), filed July 30, 2009, is DENIED.

DATED December 10, 2009.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs:

Brandt Powers Milstein, Esq.
Shane C. Youtz, Esq.
Albuquerque, NM

James Marshal Piotrowski, Esq.
Boise, ID


Counsel for Defendants:

Peter S. Auh, Esq.
Albuquerque, NM